IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, GENERAL COMMITTEE OF ADJUSTMENT, CENTRAL REGION, <br><br> Plaintiffs, <br><br> v. <br><br> UNION PACIFIC RAILROAD, and, NATIONAL RAILROAD ADJUSTMENT BOARD, <br><br> Defendants. | Case No. 05 C 2401 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

The Brotherhood of Locomotive Engineers and Trainmen (the "BLET" or the "Organization") brings this action under Section 3 First (q) of the Railway Labor Act ("RLA" or "Act"), 45 U.S.C. § 153 First (q), to vacate a set of awards issued on March 15, 2005 by the National Railroad Adjustment Board (the "NRAB" or the "Board"). In those awards, the NRAB dismissed each of five grievance claims against Union Pacific Railroad (the "Carrier") upon its finding that "since no evidence of conference was set forth in the on-property record, the Board is without authority to assume jurisdiction over the claim." Before the Court now is the Carrier's Motion to Dismiss the Organization's Petition to Review and to Vacate Awards. Accepting all well-pled facts in the Petition and drawing all reasonable inferences in favor of the Organization, this Court holds that: (1) the RLA requires conferencing even if a collective bargaining agreement ("CBA") does not require conferencing, (2) the Board did not unlawfully limit its jurisdiction by refusing to consider

evidence of conferencing outside of the on-property record and (3) the Board's procedure did not violate due process. Accordingly, the Carrier's Motion to Dismiss is granted.

**The Railway Labor Act**

Congress enacted the RLA in 1926 to promote the speedy and peaceful resolution of railroad labor disputes.[1] *See Union Pacific Railroad v. Sheehan*, 493 U.S. 89, 94 (1978); *Kulavic v. Chicago & Illinois Midland Ry.*, 1 F.3d 507, 515 (7th Cir. 1993). The RLA established a "mandatory, exclusive, and comprehensive system for resolving grievance disputes" between railroads and their employees. *Brotherhood of Locomotive Engineers v. Louisville & Nashville R.R.*, 373 U.S. 33, 38 (1963). As part of this system, the RLA called for unsettled minor disputes to be referred to local boards of adjustment. These early adjustment boards, however, were established by voluntary agreement of the parties and lacked the authority to bind the parties. *See Brotherhood of Railroad Trainmen v. Chicago River & I.R. Co.*, 353 U.S. 30, 36, 77 S.Ct. 635 (1957). These boards also were "composed of equal numbers of management and labor representatives and deadlocks over particular cases became commonplace. Since no procedure for breaking such deadlocks was provided, many disputes remained unsettled." *Union Pacific Railroad Co. v. Price*, 360 U.S. 601, 610, 79 S.Ct. 1351 (1959). Congress amended the RLA in 1934 to deal with these early difficulties, abolishing the voluntarily-created local boards of adjustment in favor of a national board and providing that "[u]pon failure of any division to agree upon an award because of a deadlock or inability to secure a majority

---

[1] The purposes of the chapter are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. 45 U.S.C. § 151a.

vote of the division members . . . then such division shall forthwith agree upon and select a neutral person, to be known as 'referee,' to sit with the division as a member thereof, and make an award." 45 U.S.C. § 153 First (l); *see Brotherhood of Railroad Trainmen v. Chicago River & I.R. Co.*, 353 U.S. 30, 36-37, 77 S.Ct. 635 (1957) (National Railroad Adjustment Board "mak[es] it unnecessary for parties to agree to establish their own boards"). The current National Railroad Adjustment Board is composed of four divisions, each division having jurisdiction over disputes involving different classes or crafts of employees. *See* 45 U.S.C. § 153 (h).

Among its roles, the RLA provides the machinery for resolving minor disputes between individual employees and their employers, where such disputes arise out of grievances or the interpretation of agreements concerning rates of pay, rules or working conditions. The first steps in the dispute resolution process take place on the railroad property. *See Ryan v. Union Pacific R.R.*, 286 F.3d 456, 458 (7th Cir. 2002). The parties' CBA here provides for an "on-property" process that includes a series of investigations, hearings and appeals up to the designated Labor Relations officer. *See* Petition, Exhibit B at A-34 to A-36. Disputes that cannot be resolved on the property may be referred to the NRAB. *See* 45 U.S.C. § 153 First (i); *Ryan*, 286 F.3d at 458. In between these two stages, and at the center of the controversy in this case, is so-called "conferencing." The RLA discusses conferencing in two provisions:

> All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.

45 U.S.C. § 152, Second.

3

> In case of a dispute between a carrier or carriers and its or their employees, arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, it shall be the duty of the designated representative or representatives of such carrier or carriers and of such employees, within ten days after the receipt of notice of a desire on the part of either party to confer in respect to such dispute, to specify a time and place at which such conference shall be held: Provided, (1) That the place so specified shall be situated upon the line of the carrier involved or as otherwise mutually agreed upon; and (2) that the time so specified shall allow the designated conferees reasonable opportunity to reach such place of conference, but shall not exceed twenty days from the receipt of such notice: And provided further, *That nothing in this Act shall be construed to supersede the provisions of any agreement (as to conferences) then in effect between the parties*.

45 U.S.C. § 152, Sixth (emphasis added). This statutory text, read in light of the historical purpose of the RLA, ultimately must guide this Court's resolution of the questions presented. *See Burlington N. R.R., Co. v. Brotherhood of Maintenance of Way Employees*, 481 U.S. 429, 444, 107 S.Ct. 1841 (1987) ("The Railway Labor Act 'cannot be appreciated apart from the environment out of which it came and the purposes which it was designed to serve'"), quoting *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 751, 65 S.Ct. 1282 (1945) (Frankfurter, J., dissenting).

**The Organization's Allegations**

The Organization's petition seeks review of five awards issued by the First Division of the NRAB on March 15, 2005. (Compl. ¶ 1.) The BLET and Union Pacific are parties to several agreements covering employees in the territory designated by Union Pacific as the Central Region. (Compl. ¶ 8.) The Organization filed five claims with the Carrier relating to discipline decisions that the Carrier allegedly made in violation of one of the collective bargaining agreements. (Compl. ¶ 11.) Pursuant to the terms of the collective bargaining agreement, the parties then engaged in an

4

on-property investigation of the claims. (Compl. ¶ 12.) After these on-property proceedings, the Organization alleges that it held a conference with the Carrier regarding the claims. (Compl. ¶¶ 13-14.) Failing to resolve the claims at the conference, the Organization sent a letter of intent to the NRAB to initiate hearings on the claims. (Compl. ¶ 14.) In the letter of intent, the Organization did not allege that conferencing had occurred. (Compl. ¶ 15.) The Carrier did not raise an objection regarding the lack of conferencing prior to or when the Organization filed its letter of intent. (Compl. ¶ 18.) Indeed, neither party discussed conferencing in any of their pleadings or papers filed with the NRAB. (Compl. ¶ 19.) The Carrier Board Member first raised an objection based on the lack of conferencing at the executive session of the NRAB held just prior to a March 18, 2004 hearing on these claims. (Compl. ¶ 20.) The Organization argued that the Carrier's objection was untimely, but nevertheless offered to submit evidence that conferencing had, in fact, occurred. (Compl. ¶ 22.) The neutral member of the NRAB panel, Referee Goldstein, initially said he would allow the submission of evidence on whether conferencing occurred but later refused to consider the evidence. (Compl. ¶¶ 23, 25.) The NRAB then issued awards dismissing the five disciplinary claims, explaining in each:

> The Board emphasizes that all evidence of the statutorily required conference is entirely absent from the on-property record where, in order to be considered by the Board, it must reside. Therefore, the Organization's belated production of support evidence, post-hearing in this case, no matter how convincing, cannot be entertained by the Board, given its function as an appellate tribunal, we stress.

*See, e.g.*, Petition, Exhibit A, Award No. 26089, at 3.

**DISCUSSION**

When considering a motion pursuant to Rule 12(b)(6), a court must take as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). A Rule 12(b)(6) motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

Section 3 First (q) of the RLA allows this Court to set aside a NRAB award in whole or in part, or to remand a matter, when the Board: (1) fails to comply with the requirements of the RLA; (2) fails to confine itself to matters within its jurisdiction; or (3) a member of the board engages in fraud or corruption in making the award. *See* 45 U.S.C. § 153 First (q); *Union Pacific Railroad v. Sheehan*, 493 U.S. 89, 93 (1978) ("Only upon one or more of these bases may a court set aside an order of the Adjustment Board"). In this circuit, an award also may be vacated if the NRAB denied a party due process. *See Steffens v. BRAC*, 797 F.2d 442, 448 and n.5 (7th Cir. 1986).

The Organization argues that, in issuing its awards, the NRAB failed to comply with the Act, failed to conform to its jurisdiction and violated due process. Specifically, the Organization challenges the Board's ruling that it lacked jurisdiction to review the merits of the claims because "all evidence of the *statutorily required conference* is entirely absent from the *on-property record*." From this holding thus arise the two principle questions that this Court must answer. First, does the RLA require conferencing when the parties' CBA does not require conferencing and second, must evidence of the conference be contained in the on-property record.

**"Conferencing" Requirement**

This Court begins its analysis with the language of the statute itself – § 152 Second states that "all disputes . . . shall be considered . . . in conference." 45 U.S.C. § 152, Second; *see Leocal v. Ashcroft*, 543 U.S. 1, 9, 125 S.Ct. 377 (2004) (statutory construction starts with text of the statute). Standing alone, this section is unequivocal that conferencing shall occur in all disputes. The Organization, however, argues that to be understood properly the prescription in § 2 Second must be read in conjunction with §§ 2 Sixth and 3 First (i). Taking into account these other sections, the Organization argues that the RLA does not mandate conferencing prior to referring a dispute to the NRAB when the parties' collective bargaining agreement does not require a conference to be held as part of its grievance process.

The NRAB's decisions on conferencing uniformly hold that "the failure to hold a conference on the property deprives the Board of jurisdiction to hear [a] dispute." Third Division Award No. 30260 (July 19, 1994), at 2; *see* Third Division Award No. 30114 (Apr. 4, 1994), at 2 ("It is well settled by the board that such a conference between the parties is mandatory and is a jurisdictional requirement"). Speaking more directly to the Organization's interpretation of the RLA, the Board held that: "Section 2, Second of the National Railway Labor Act – in clear, concise language – calls for a conference of the parties on the property prior to submission of a claim to this Board. Section 2, Sixth, of this Act does not in any way alter the mandatory provision of Section 2, Second; it merely gives to either party the right of requesting a conference and imposes a time limit within which to confer after a request has been made." Fourth Division Award No. 4931 (Sept. 22, 1994), at 2, quoting Third Division Award 14873 (October 21, 1966), at 5.

7

As the body created to administer the RLA, deference usually is given to the NRAB's construction of the Act.[2] *See Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843, 104 S.Ct. 2778 (1984). An agency's determination of its own jurisdiction must be reviewed de novo, however. *See Northern Illinois Steel Supply Co. v. Secretary of Labor*, 294 F.3d 844, 846-47 (7th Cir. 2002). The NRAB's decisions requiring that a conference be held on all disputes appear to fall within the Seventh Circuit's proscription on giving deference to an agency's determination of its own statutory jurisdiction.[3] *See McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081 (1992) (judicially imposed exhaustion requirements are prudential while statutory exhaustion requirements are jurisdictional). In the end, such deference is unnecessary since the Court agrees with the NRAB's reading of the RLA.

Section 2 Sixth states "[t]hat nothing in this Act shall be construed to supersede the provisions of any agreement (as to conferences) then in effect between the parties." At first glance, this admonition indicates that § 2 Second's conferencing requirement should not be construed supercede the dispute resolution process negotiated in the parties' collective bargaining agreement. But such an interpretation would ignore the context of the quoted sentence. *See Barmes v. U.S.*, 199 F.3d 386, 389 (7th Cir. 1999) ("[A] particular section or sentence of a statute must be interpreted in

---

[2] The parties briefly reference the regulations implementing the conferencing requirement and other provisions of the RLA. *See* 29 C.F.R. 301, *et seq.* Since these regulations simply parrot the statutory language they provide no help in interpreting the statute.

[3] Given Congress' delegation of authority to the NRAB and the NRAB's expertise in the labor dispute process, it seems anomalous not to afford its decisions on conferencing the usual deference. *See Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 380-82, 108 S.Ct. 2428 (1988) (Scalia, J., concurring) (reasoning that *Chevron* deference should apply to an agency's interpretation of its own statutory jurisdiction); *California Dental Ass'n v. F.T.C.*, 526 U.S. 726, 765, 119 S.Ct. 1604 (1999) (citing numerous cases in which Supreme Court has given an agency's interpretation of its own jurisdiction deference). Nevertheless, this Court, bound by Seventh Circuit precedent, reviews de novo the question of the NRAB's jurisdiction.

the context of related sections and the purpose of the statute as a whole"). Section 2 Sixth deals with the time, place and manner that a conference shall be held. *Id.* It first requires that within 10 days of notice from either party of a desire to confer, the parties' representatives must "specify the time and place at which a conference shall be held." The subsequent sentences in § 2 Sixth then limit the time and place of such conference. The final sentence concluding "[t]hat nothing in this Act shall be construed to supersede the provisions of any agreement (as to conferences) then in effect between the parties." In context, the last sentence of § 2 Sixth logically reads as an additional limit on the time and place of the conference rather than an allowance for the parties to bargain as to whether a conference is held at all. In the same way, § 2 Sixth does not prevent the parties from negotiating the company level procedures leading up to the conference, but it does not permit them to displace the conferencing requirement itself. *See Pawlowski v. Northeast International Commuter Railroad Corp.*, 186 F.3d 997, 1002-03 (7th Cir. 1999) (interpreting § 2 Sixth to mean that "railroads and unions remain free to establish by agreement the procedures for investigative and disciplinary proceedings at the company level . . . so long as the right to confer over disputes arising from them is preserved, the RLA is not offended").

Section 153 First (i) states that "[t]he disputes between . . . a group of employees and a carrier . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes," and if no resolution is reached the matter may be submitted to the Adjustment Board. 45 U.S.C. § 153, First (i). "[T]he 'usual manner' provision allows the railroad and the union to prescribe *in the collective bargaining agreement* the manner in which grievance proceedings shall be conducted on the property." *Ryan v. Union Pacific R.R.*, 286 F.3d 456, 459 (7th Cir. 2002) (holding that the usual manner is defined by the terms of the collective

bargaining agreement) (emphasis in original). The conference described in § 2 Second, however, is a separate, intermediate step that follows the other on-property proceedings. *See Pawlowski*, 186 F.3d at 1003 (holding that "where a [CBA] is in place, the invocation of that agreement's grievance procedure is a necessary pre-requisite to any statutory right to a conference with union representation under § 152 Second"). As such, § 3 First (i)'s "usual manner" provision does not subject the conferencing requirement to the terms of the parties' collective bargaining agreement. *See Ryan*, 286 F.3d at 459 ("[T]he proceeding on the property, is to be conducted in the usual manner, that is, in the manner agreed upon by the railroad and the union. *That* stage is for them to design as well as to administer") (emphasis in original).

Finally, the statutory requirement of a conference facilitates the purpose of the RLA – that is, to create a comprehensive and mandatory process for the prompt and orderly settlement of railway labor disputes. *See* 45 U.S.C. § 151a; 45 U.S.C. § 152 First ("It shall be the duty of all [parties] to exert every reasonable effort . . . to settle all disputes"). As explained in one Board decision:

> The mandatory conference not only permits an in-depth discussion of each party's evidence to avoid undue surprise at the later, formal adjudicatory stage (if necessary) but it also encourages the parties to explore all avenues of possible settlement to promote the voluntary resolution of disputes. Had Claimants and the Carrier held a conference, they might have been able to reach a mutually satisfactory accommodation on this claim. The Railway Labor Act's dispute resolution process is designed to force the parties to attempt to reach a settlement even if one party perceives little likelihood of successfully resolving the case before resorting to the Board.

Third Division Award No. 28896 (July 30, 1991), at 1-2; *see* Third Division Award No. 18964 (Jan. 27, 1972) ("[I]t is the intent of the Railway Labor Act that issues in a dispute before this Board shall

have been framed by the parties in conference on the property"). The United States Supreme Court has spoken similarly:

> [O]ne of the statute's primary commands, judicially enforceable, is found in the repeated declaration of a duty upon all parties to a dispute to negotiate for its settlement. This duty is not merely perfunctory. Good faith exhaustion of the possibility of agreement is required to fulfill it.

*Elgin, J. & E. Ry.*, 325 U.S. at 712 n.12.

While the §§ 2 Sixth and 3 First (i) permit the parties, in their collective bargaining agreement, to set terms regarding the time and place of conference and prescribe the manner in which grievance proceedings shall be conducted on the property, they do not allow the parties to eliminate § 2 Second's requirement that a conference actually be conducted prior to referring the dispute to the NRAB.

**Evidence of Conferencing in the On-Property Record**

After determining that the RLA required the parties to confer before it could have jurisdiction to hear their dispute, the NRAB refused to consider evidence outside of the on-property record that the conference occurred. The NRAB held that "the requirement that proof of conference exist within the on-property record is a statutory prerequisite to this Board's jurisdiction." The NRAB reasoned that its function was similar to an appellate tribunal and it therefore was restricted from considering new evidence or arguments not contained in the on-property record. The opinion also concluded that the Carrier's objection was timely raised. The Board cited numerous awards as precedent for each holding in its opinion.

11

This Court may provide the Organization relief only if the NRAB's refusal to consider evidence of conferencing outside of the on-property record was motivated by bad faith or misconduct or deprived the Organization of its due process right to a fundamentally fair hearing.[4] *See United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 108 S.Ct. 364 (1987) (holding that NRAB's procedural and evidentiary rulings must be upheld absent bad faith or misconduct); *National Post Office v. U.S. Postal Service*, 751 F.2d 834, 841 (7th Cir. 1985) (due process requires arbitrator to provide "a fundamentally fair hearing"); *Transportation Communications Int'l Union v. Chicago, West Pullman & S. R.R.*, 1992 U.S. Dist. LEXIS 13693, *8-9 (N.D. Ill. 1992) (stating that "labor arbitrators are free to decide whether to consider any piece of evidence and such decisions are not subject to judicial review"). The Organization does not allege that the NRAB decision was actuated by bad faith or misconduct, but does feel that the decision denied it due process. As to due process, the Organization argues that no precedent existed for the Board's decision, the decision applies a hyper-technical rule of procedure and the Carrier's untimely objection was unfair.

To begin, the Court respectfully disagrees with the Organization's assertion that "[u]ntil the awards issued in this case, 'conferencing' of discipline cases has never been deemed a 'jurisdictional issue' in discipline cases." Plf's Opp. at 4-5. The Board's jurisprudence has long been settled that

---

[4] The Seventh Circuit, like the Second, Fifth, Eighth and Ninth Circuits, allows federal courts to review due process claims under the RLA. *See Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999); *Goff v. Dakota, Minnesota & E. R.R. Corp.*, 276 F.3d 992, 997 (8th Cir. 2002); *Atchison, Topeka and Santa Fe Ry. Co. v. United Transp. Union*, 175 F.3d 355, 357 (5th Cir. 1999); *Shafii v. PLC British Airways*, 22 F.3d 59, 64 (2d Cir. 1994); *English v. Burlington N. R.R. Co.*, 18 F.3d 741, 744 (9th Cir. 1994).

The Third, Sixth, Tenth and Eleventh Circuits have held that federal courts are precluded from reviewing due process claims arising from NRAB decisions. *See Kinross v. Utah Ry. Co.*, 362 F.3d 658, 662 (10th Cir. 2004); *United Steelworkers of Am. Local 1913 v. Union R.R. Co.*, 648 F.2d 905, 911-12 (3d Cir. 1981); *Henry v. Delta Air Lines*, 759 F.2d 870, 873 (11th Cir. 1985); *Jones v. Seaboard Sys. R.R.*, 783 F.2d 639, 642 n.2 (6th Cir. 1986).

conferencing is a prerequisite to its exercise of jurisdictional over a dispute.[5] *See* Third Division Award No. 30114 (Apr. 4, 1994), at 2 ("It is well settled by the board that such a conference between the parties is mandatory and is a jurisdictional requirement"). Beyond this first point, the Organization argues that even if conferencing were required, it violates due process not to allow them to submit evidence on the issue outside of the on-property record. The Organization first charges that the rule limiting the evidence of conferencing to the record was "made up on the spot, and applied retroactively to a party which had no reason to anticipate its application in this way." Admittedly, no Board opinion expressly states that the Board will not consider evidence of conferencing outside of the record. At the same time, Board precedent on conferencing cites the lack of evidence *in the record* as the basis for its decision. *See* Second Division Award No. 12475 (Nov. 4, 1992), at 3 ("[T]here is nothing in the record to establish that a conference was held on the property"); Third Division Award No. 30821 (Apr. 27, 1995), at 1 ("Nowhere does the record indicate that a conference was ever held or requested on the property"). And the Board's precedent that it will not consider evidence or arguments not contained in the on-property record is quite clear. *See* Third Division Award No. 30862 (May 10, 1995), at 8-9 (citing numerous awards applying this rule); Second Division Award No. 6883 (June 25, 1975), at 2 (noting that "[a]wards of all divisions of the National Railroad Adjustment Board upholding this principle are legion"). The Organization does not challenge the reasoning or authority of this latter precedent, only its application to the facts in this case. The Organization asserts that the NRAB's limitation on considering new evidence and

---

[5] *See also* Third Division Award No. 30260 (July 19, 1994), at 2 ("Following a long line precedents, the Board concludes that the failure to hold a conference on the property deprives the board of jurisdiction to hear the dispute"); Fourth Division Award No. 3203 (July 7, 1975), at 2 ("[T]he lack of on-property conference and/or lack of request for same is generally recognized as presenting a question of this Board's jurisdiction to handle the claim")

arguments relates only to new evidence and arguments on the merits of the case, not evidence of conferencing. The Court does not disagree with the Organization's reading of the precedent or the logic of its distinction but the question is whether the refusal to accept evidence outside of the on-property record is a violation of due process.

Despite the Organization's well-taken arguments, the Organization concedes at several points that it easily could have included such evidence in the record submitted to the Board.[6] *See, e.g.*, Plf's Opp. at 17-18 ("[T]he Organization could have responded in the opening brief ('yes, conferencing did occur') and these cases would not now be before this Court"). Thus, the Organization does not allege that it could not present evidence of conferencing to the Board through its notice of intent or opening submission but instead that it did not present such evidence "[s]ince conferencing is not required by the system wide agreement, and was never disputed by the Carrier prior to the hearing on March 18, 2004." (Compl. ¶ 15); *see* 45 U.S.C. § 153 First (i) ("[D]isputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes"). Under its limited scope of review, the Court cannot find that the NRAB proceedings were fundamentally unfair when the Organization had the ability to submit evidence of conferencing, Board precedent made clear that it considered conferencing a jurisdictional requirement and Board precedent indicated that the record should contain evidence of such conferencing. *See Pierce v.*

---

[6] The Organization makes several analogies to the judicial system's appellate process and concludes that requiring a party to plead jurisdiction in its opening submission would be "unheard of and unconscionable in any modern court proceeding." The Court disagrees with this conclusion and notes also that "parties that have chosen to remedy through arbitration rather than litigation should not expect the same procedures they find in the judicial area." *Generica Ltd. v. Pharmaceutical Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997); *see, e.g.*, Seventh Circuit Rule 28(a) (requiring a jurisdictional statement by appellant); Fed. R. App. P. 28(a)(4) (same).

*Commonwealth Edison Co.*, 1996 WL 374129, *4 (N.D. Ill. 1996) (rejecting argument that "the arbitration panel exceeded their powers and refused to hear evidence material to the controversy").

The final element of the Organization's due process argument involves the belated nature in which the absence of conferencing was raised to the Board. But the Board regularly has considered such late challenges to their jurisdiction in the past.[7] In Award No. 4931, the Carrier Member at the Referee Hearing claimed the Board lacked jurisdiction to hear the case because a conference was not held. In dismissing the claims, the Board relied on precedent that "jurisdictional issues can be raised at any time." Fourth Division Award No. 4931(Sept. 22, 1994), at 2; *see* Second Division Award No. 12517 (May 3, 1993), at 3 ("With regard to the jurisdictional issue, even though the Organization argues that it comes late, this Board has uniformly held, on all Divisions, that issues of jurisdiction may be raised at any time"); Third Division Award No. 27575 (Sept. 29, 1988), at 3 ("The Board has over the years held the jurisdictional issues can be raised at any time"); Fourth Division Award No. 3203 (July 7, 1975), at 2 ("[I]t is universally recognized that such jurisdictional challenges may be presented at any stage of the proceeding"). Accordingly, the Board did not unfairly or arbitrarily consider the jurisdictional issue and due process was not violated.

**Conclusion and Order**

Construing the plain language of § 2 Second, and taking into consideration the history of the RLA, this Court holds that the parties are required to conference all disputes before they are referred to the NRAB. The provisions of §§ 2 Sixth and 3 First (i) permit the parties to set the terms and

---

[7] A proposition familiar to this Court. *See* Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that court lacks jurisdiction of the subject matter, the court shall dismiss the action"); *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510 (1884) (jurisdictional challenges may be raised at any stage of the proceedings by any party or the court itself).

conditions for a conference to be held in their collective bargaining agreement, but those sections do not permit the parties to eliminate the conferencing step altogether. This Court also finds that the NRAB did not violate due process by refusing to consider evidence of conferencing outside of the on-property record. Wherefore, the Carrier's Motion to Dismiss is granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 15, 2006